UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MORGAN, ELIZABETH NORDEN, DAVID VAUGHT, DORIS DAVENPORT, ANDREA RAILA, JACKSON PALLER, COMMITTEE FOR THE ILLINOIS DEMOCRACY AMENDMENT, an unincorporated political association, | ) ) ) ) ) ) ) | Case No. 20 C 2189<br><br>Hon. Charles R. Norgle, Sr., Presiding Judge<br><br>Hon. M. David Weisman, Magistrate Judge |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JESSE WHITE, in his official capacity as Illinois Secretary of State, DEVON REID, in his official capacity as Evanston City Clerk, KAREN A. YARBROUGH, in her official capacity as Cook County Clerk, WILLIAM J. CADIGAN, KATHERINE S. O'BRIEN, LAURA K. DONAHUE, CASSANDRA B. WATSON, WILLIAM R. HAINE, IAN K. LINNABARY, CHARLES W. SCHOLZ, WILLIAM M. MCGUFFAGE, in their official capacities as Board Members for the Illinois Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | Hon. Rebecca R. Pallmeyer, Emergency Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are Illinois registered voters who seek to circulate (1) "an initiative petition for a constitutional amendment referendum on the Illinois Democracy Amendment pursuant to Article XIV, Section 3 of the Illinois Constitution" and/or (2) "an initiative petition for a local government referendum in Evanston, Illinois pursuant to Article VII, Section 11 of the Illinois Constitution." (Am. Compl. [26] ¶¶ 3–8.)[1] Plaintiffs wish to qualify these referenda for placement on the November 3, 2020 general election ballot. To do so, they must satisfy certain petition collection requirements set forth in the Illinois Constitution and the Illinois Election Code. On April 7, 2020,

---

[1] Plaintiffs also include the Committee for the Illinois Democracy Amendment, "an unincorporated political association registered as a ballot initiative committee with the Illinois State Board of Elections." (Id. ¶ 9.)

Plaintiffs filed this lawsuit "to enjoin or modify Illinois petition collection requirements for initiative referendums to be placed on the November 3, 2020 general election ballot . . . in light of the current public health emergency caused by the novel coronavirus" and Governor J.B. Pritzker's stay-at-home orders. (*Id.* ¶ 1.) Defendants are the Illinois Secretary of State (Jesse White); the Evanston City Clerk (Devon Reid); the Cook County Clerk (Karen A. Yarbrough); and members of the Illinois State Board of Elections.

On April 9, 2020, Plaintiffs filed an emergency motion for a preliminary or permanent injunction [4] seeking to modify certain petition collection requirements, extend the deadline for submitting the initiative petition under Article XIV, Section 3 of the Illinois Constitution, and reduce the number of signatures required to qualify both initiative petitions for placement on the November 3, 2020 general election ballot.[2] The court held a hearing by telephone on April 17, 2020 and denied the motion. Plaintiffs filed an emergency motion for reconsideration "in light of new developments and to correct the record" on April 28, 2020 [29]. The court denied that motion, as well, after a further telephone hearing on May 7, 2020. This order briefly memorializes the reasons for that ruling.

## BACKGROUND

**A.    Illinois Election Laws**

Plaintiffs seek to propose an amendment to the Illinois Constitution, pursuant to a procedure established in Article XIV, Section 3 of the Illinois Constitution. That Article provides:

> Amendments to Article IV of this Constitution may be proposed by a petition signed by a number of electors equal in number to at least eight percent of the total votes cast for candidates for Governor in the preceding gubernatorial election. . . . A petition shall contain the text of the proposed amendment and the date of the general election at which the proposed amendment is to be submitted, shall have been signed by the petitioning electors not more than twenty-four months preceding that general election and shall be filed with the Secretary of State at least six months before that general election. The procedure for determining the validity and sufficiency of a petition shall be provided by law.

---

[2]     This matter is assigned to the Honorable Charles R. Norgle, Sr.  Judge Pallmeyer is addressing this matter as emergency judge, for purposes of this motion only, pursuant to paragraph 7 of Third Amended General Order 20-0012.

ILL. CONST. art. XIV, § 3; *see also* 10 ILCS 5/28-9. Thus, for their proposed amendment to qualify for placement on the November 3, 2020 general election ballot, Plaintiffs were required to submit 363,813 initiative petition signatures to the Illinois Secretary of State by May 3, 2020. (Am. Compl. ¶ 37.) Because the petition must be signed by electors "not more than twenty-four months preceding [the] general election" and "filed with the Secretary of State at least six months before" that election, the 18-month window in which Plaintiffs were to gather signatures was set to close less than four weeks after Plaintiffs initiated this action.

Article VII, Section 11 of the Illinois Constitution authorizes a process for citizens who wish to circulate an initiative petition for a local government referendum, as well. It provides:

> (a) Proposals for actions which are authorized by this Article or by law and which require approval by referendum may be initiated and submitted to the electors by resolution of the governing board of a unit of local government or by petition of electors in the manner provided by law.
>
> (b) Referenda required by this Article shall be held at general elections, except as otherwise provided by law. Questions submitted to referendum shall be adopted if approved by a majority of those voting on the question unless a different requirement is specified in this Article.

ILL. CONST. art. VII, § 11; *see also* 10 ILCS 5/28-7. For the Evanston local government referendum to qualify for placement on the November 3, 2020 general election ballot, Plaintiffs must submit 2,800 signatures to the Evanston City Clerk by August 3, 2020. (Am. Compl. ¶ 38.)[3]

The Illinois Election Code also imposes signature collection requirements. The Code states that at the bottom of each sheet of an initiative petition, the circulator must add a sworn statement "certifying that the signatures on that sheet . . . were signed in his or her presence." 10 ILCS 5/28-3. It also requires that the original petition sheets, rather than photocopies or duplicates, be filed with the appropriate election authorities. *Id.*; *see also* 10 ILCS 5/28-9. These are among the requirements Plaintiffs seek to enjoin. (*See, e.g.*, Am. Compl., Prayer for Relief.)

---

[3] The parties do not explain how they arrived at this number, but both sides agree that Plaintiffs need 2,800 signatures by August 3, 2020.

**B.     Defendants**

According to Plaintiffs' allegations, the members of the Illinois State Board of Elections are the only Defendants "empowered to enforce and administer Illinois election laws." (Am. Compl. ¶ 13.) Plaintiffs allege that the Evanston City Clerk "is authorized to accept filings of local government initiative referendums for Evanston pursuant [to] Article VII, Section 11 of [the] Illinois Constitution and to certify those referendums to the Cook County Clerk for ballot placement," and that the Cook County Clerk's office "is responsible for placing on the election ballot any Article VII initiative referendum questions certified by the clerks of suburban Cook County municipalities, including the Evanston City Clerk." (*Id.* ¶¶ 11–12.) Finally, Plaintiffs allege that the Illinois Secretary of State "is constitutionally authorized to accept filings of petitions for constitutional amendments pursuant to Article XIV, Section 3 of the Illinois Constitution." (*Id.* ¶ 10.)

The Illinois Secretary of State, for his part, has explained that he "does not enforce the petition collection requirements at issue here." (Def. White Resp. ("White Resp.") [20] at 1.) Rather, once proposed constitutional amendments are filed with the Secretary of State, he "deliver[s] such petition[s] to the State Board of Elections" within one business day. (*Id.* (quoting 10 ILCS 5/28-9).) After the State Board of Elections resolves any objections to the petitions (White Resp. at 1 (citing 10 ILCS 5/28-4)), the Secretary of State "ensures that any proposed amendments are published in newspapers throughout the State (in multiple languages) and that pamphlets describing the amendments are mailed to every mailing address in the State (again, in multiple languages)." (White Resp. at 1.) The Secretary of State's deadline for publishing the proposed amendments in newspapers and mailing the related pamphlets is "at least one month before the election (October 3, 2020)." (Decl. of Amy Williams in Supp. of White Resp. ("Williams Decl." [20-1] ¶¶ 3, 8.) To meet the October 3, 2020 deadline, the Secretary of State must "start[] working in early May, shortly after the petition filing deadline." (*Id.* ¶ 4.)

4

### C. Plaintiffs' Petition Circulation Efforts

Of the seven Plaintiffs, just one—William Morgan—claims to have "begun an initiative petition drive" before filing this lawsuit. (Am. Compl. ¶ 3.) The remaining Plaintiffs allege that they "wish[ ] to circulate" petitions. (Am. Compl. ¶¶ 3–8.) And although Plaintiff Morgan alleges that he has begun the process, he offered no evidence showing when he began those efforts or how many signatures he has collected. (*See id.*; *see generally* Morgan Decl., Ex. 1 to Compl. [1-2], Ex. 1 to Am. Compl. [26-1].) The court notes that Morgan's ballot initiative committee was created on April 1, 2020, eight days before he filed this suit. (*See* Ex. A to Def. Bd. of Elections Resp. [21-1].) The remaining Plaintiffs also offer no evidence concerning the number of signatures, if any, they have collected to date for the relevant initiative petitions. (*See generally* Exs. 2–6 to Compl. [1-3–1-7]; Exs. 2–6 to Am. Compl. [26-2–26-6].)

Plaintiffs contend that they could not have started collecting signatures for the Illinois Democracy Amendment before March 31, 2020. (*See* Plaintiffs' Reply in Supp. of Emergency Mot. for Reconsideration ("Reply") [36] ¶ 11.)[4] That was the deadline for the Illinois Joint Commission on Lobbying and Ethics Reform—which the Illinois General Assembly created in November 2019—to "examin[e] current Illinois legislation regarding ethics reform, solicit[] feedback from experts and the general public, and release[] a final report with its review and recommendations." (Am. Compl. ¶ 21.) According to Plaintiffs, the Commission determined that "due to the COVID-19 pandemic," it could not meet its deadline and "would therefore make no recommendations on lobbying and ethics reform." (*Id.* ¶ 30.) This announcement, Plaintiffs argue, was the "impetus" for the initiative petition concerning the Illinois Democracy Amendment. (Reply ¶ 11; Apr. 17, 2020 Hrg. Tr. at 7:15–19.)

---

[4] Plaintiffs do not advance this argument for the Evanston local government referendum.

5

## **DISCUSSION**

**A.     Standing**

"[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018).  To establish Article III standing, a plaintiff must show (1) an "injury in fact"; (2) a sufficient "causal connection between the injury and the conduct complained of"' and (3) a "likel[ihood]" that the injury will be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The court assumes that Plaintiffs have sufficiently alleged an injury in fact:  when they filed this suit on April 8, the conditions created by the Governor's stay-at-home order largely defeated any chance they might otherwise have had to collect, by May 3, 2020, the signatures needed to put their constitutional amendment referendum on the general election ballot.  Indeed, Plaintiffs have now missed that deadline.  At the outset of this lawsuit, there was also a risk that the stay-at-home order could be extended beyond May 30, 2020 and eliminate any chance Plaintiffs might otherwise have had to collect enough signatures for the Evanston local government referendum by August 3, 2020—though there is a strong case to be made that this risk is too minimal or speculative to confer standing.  The court gives Plaintiffs the benefit of the doubt on the injury-in-fact requirement.  Plaintiffs fall short on the other requirements for standing, however.

First, Plaintiffs have not demonstrated that their injury is traceable to the challenged actions of any of the Defendants.  *See Lujan*, 504 U.S. at 560.  Plaintiffs had 18 months to collect signatures for both referendums, but, other than Morgan, none took any action for the first 16 months.  And although Morgan alleges that he began collecting signatures before March 31, 2020, he does not state when he began or how many signatures he has collected.  Regarding the Illinois Democracy Amendment, Plaintiffs blame their delay on the Commission's failure to make recommendations on lobbying and ethics reform by March 31, 2020.  (*See* Reply ¶ 11; Apr. 17, 2020 Hrg. Tr. at 7:15–19.)  But even if the Commission's failure to make recommendations came as a surprise, Plaintiffs could have recognized the possibility that the Commission's

6

recommendations would not be adopted, or would not align perfectly with reforms proposed in the Illinois Democracy Amendment. Plaintiffs could have begun the petition process months ago but most chose not to do so, and Morgan's efforts appear to be thin.

Plaintiffs attempt to excuse their inaction by observing that in a handful of past election cycles, petition circulators collected all required signatures in the two months before the deadline—the approximate amount of time that remained to qualify the Illinois Democracy Amendment for the general election ballot before the stay-at-home order commenced. (*See, e.g.*, May 7, 2020 Hrg. Tr. [39], at 11:15–21 (citing Vaught Decl., Ex. 3 to Am. Compl. [26-3] ¶ 5).) But the Governor did not issue his stay-at-home order until mid-March, well less than two months before the May 3, 2020 deadline. Nothing in the record supports an inference that, absent that order, Plaintiffs would have been able to collect necessary signatures in the weeks between the issuance of the order and May 3. Morgan, the only Plaintiff who had begun the process at all, offered no evidence that he had collected a single signature before this suit was filed in early April.

Plaintiffs have further undermined any argument that the Defendants' actions are causally connected to their injuries by repeatedly contending that the stay-at-home order is the "state action" that itself violated the Constitution in that the order "basically clipped off two" of the 18 months allotted for signature collection. (May 7, 2020 Hrg. Tr. at 7:11–16; 13:20–14:2.) But it was Governor Pritzker, not the Illinois Board of Election Commissioners, who imposed the stay-at-home order, and Plaintiffs have not named the Governor as a Defendant. Plaintiffs' claims against the remaining Defendants are infirm for other reasons, as well: Neither the Evanston City Clerk, the Cook County Clerk, nor the Illinois Secretary of State is authorized to administer or enforce Illinois election laws. As the Evanston City Clerk points out, the law allows it to perform only one function in the referendum process: "allow the petitions to be filed." (Def. Reid Resp. [14] at 6.) The Evanston City Clerk has never argued that it "will not accept petitions signed by a number of qualified electors." (*Id.*) Similarly, the Cook County Clerk states that it "has no role in the referendum process." (Def. Yarbrough Resp. [17] at 2–3.) It merely places certified

referendum questions on the ballot. (*See* Am Compl. ¶ 12; Def. Yarbrough Mot. to Dismiss [19] at 6 (stating that the County Clerk "is not authorized to accept filings of initiative referendums," "certify such referendums," or "enforce and administer Illinois election laws with respect to the filing of referendums").) And the Secretary of State is responsible only for delivering petitions to the Board, publishing proposed amendments in newspapers, and mailing pamphlets describing those amendments.

The court thus has grave doubts concerning Plaintiffs' standing to sue any of the named Defendants. For the sake of completeness, however, the court addresses the merits of Plaintiffs' request for injunctive relief, as well.

**B.     Preliminary Injunction**

Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). A party seeking such relief must "establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018). If the moving party meets this burden, the court must then "weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* Courts in the Seventh Circuit use a "sliding scale approach"—the less likely the plaintiff is to win, the more that the "balance of harms [must] weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). The court must finally consider whether a preliminary injunction or temporary restraining order "is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). In this case, some of Plaintiffs' requests for injunctive relief would require Defendants to act affirmatively. Such "mandatory" injunctions are "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

8

1. **Likelihood of Success on the Merits / Irreparable Harm**

Plaintiffs challenge the Illinois requirements for circulating and qualifying initiative petitions for the November 3, 2020 ballot as a violation of their First Amendment rights to petition and speech.[5] Specifically, Plaintiffs contend that, because circulating initiative petitions is not an essential activity under the Governor's stay-at-home order, the combination of the COVID-19 pandemic and the Governor's order make it impossible for initiative petition circulators to gather and personally witness handwritten signatures. (Pls.' Mot. for Prelim. Inj. [6] at 5.) Therefore, Plaintiffs argue, certain Illinois petition requirements—including handwritten signatures, a notarized affidavit from the petition circulator confirming that he personally witnessed the signatures ("witness requirement"), the May 3, 2020 filing deadline, the need to obtain 363,813 signatures, and the need to bind and file all petition pages in one book ("binding requirement")—severely limit their ability to exercise their First Amendment rights under the circumstances. (*Id.* at 6.)

There is no federal constitutional right to place referenda on the ballot.[6] *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (7th Cir. 2018); *see also Protect Marriage Ill. v. Orr*, 463 F.3d 604, 606 (7th Cir. 2006) ("The ballot is not a traditional public forum for the expression of ideas and opinions."). If a state chooses, however, to open its ballots to referenda or initiatives proposed by its citizens, it may not impose unconstitutional conditions on that state-created right.

---

[5] Plaintiffs' Complaint [1] challenges the Illinois petition requirements on First Amendment and equal protection grounds, and their Amended Complaint [26] added a claim under the Illinois Constitution. Their motion for a preliminary injunction or temporary restraining order raises only the issue that these state laws violate their First Amendment rights under the circumstances.

[6] For this reason, among others, Plaintiffs' case is distinguishable from *Libertarian Party of Ill. v. Pritzker*, No. 20 C 2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020), involving state restrictions on *candidate* access to the ballot. *See Stone v. Bd. of Election Comm'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983)) ("'[T]he impact of candidate eligibility requirements on voters implicates basic constitutional rights,' to associate politically with like-minded voters and to cast a meaningful vote.").

9

*Jones*, 892 F.3d at 937 (citing *Meyer v. Grant*, 486 U.S. 414, 424 (1988)). In this context, the Supreme Court distinguishes between "valid ballot-access provisions" and "invalid interactive speech restrictions" that "unjustifiably inhibit the circulation of ballot-initiative provisions." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 192, 205 (1999). The circulation of a petition to place a referendum on the ballot "involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 489 U.S. at 421–22. When a state's restriction on a citizen's ability to circulate a petition "significantly inhibit[s] communication with voters about proposed political change," it must, like all "severe burdens" on speech, "be narrowly tailored to serve a compelling state interest." *Buckley*, 525 U.S. at 192 n. 12. On the other hand, there must "be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* at 187 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Accordingly, "[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process." *Id.* at 191. Unless a procedure designed to control access to the ballot distinguishes by viewpoint or content, a court's review of a ballot-access restriction is limited to determining whether the rule has a rational basis. *Jones*, 892 F.3d at 938.

In current circumstances (of the COVID-19 pandemic and the Governor's order requiring social distancing), the combination of the handwritten signature, number of signatures, and witness requirements arguably inhibit communicative conduct—specifically, Plaintiffs' ability to circulate petitions. The filing deadline and binding requirements, in contrast, do not inhibit Plaintiffs' ability to *circulate* petitions even under the current circumstances, nor do they affect who may engage in political speech. Instead, these provisions establish procedures that limit Plaintiffs' access to the ballot and are therefore subject to the reasoning laid out by the Seventh Circuit in *Jones*. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995) (distinguishing between statutory provisions that "control the mechanics of the electoral process" and "regulation[s] of pure speech"). Because Plaintiffs do not argue that these restrictions

distinguish by viewpoint or content, the filing deadline and binding requirements are subject to rational basis review. *See Jones*, 892 F.3d at 938. Defendants Board of Elections and White articulate numerous legitimate state objectives that justify these restrictions. (*See* Def. Board of Elections Resp. ("Board Resp.") [21] at 9–10; White Resp. at 1.) Plaintiffs have not explained how these two restrictions—designed to ensure sufficient public support for a potentially permanent change to the Illinois Constitution, to prevent fraud, and to ensure that the state can efficiently administer the election—have somehow become irrational in light of the COVID-19 pandemic. Accordingly, Plaintiffs have not shown that they are likely to succeed on the merits of their challenge to the filing deadline and binding requirements.

Plaintiffs' challenge to the handwritten signature, number of signatures, and witness requirements is more weighty because, under the circumstances of the COVID-19 pandemic, the combined effect of these requirements arguably limit Plaintiffs' ability to circulate petitions—a type of core political speech. *See Meyer*, 489 U.S. at 422. The Court in *Meyer* explained two ways in which a state law governing initiative petition circulation may restrict political expression. "First, it limits the number of voices who will convey [a] message," therefore limiting "the size of the audience they can reach." *Id.* at 422–23. In ordinary circumstances, the handwritten signature, number of signature, and witness requirements do not limit the number of persons who may circulate a petition, and may in fact increase the amount of one-on-one communication between petition circulators and voters. But during the COVID-19 pandemic, petition circulators will understandably be unwilling to seek out signatures, and potential supporters will be unwilling to venture out to sign them. These circumstances are caused by the virus itself, however, not by state law. It is only when state law prevents certain individuals from circulating petitions that First Amendment harms are implicated. *See, e.g., id.* at 428 (invalidating a state prohibition against paying circulators of initiative petitions).

The second type of harm discussed in *Meyer* occurs when a law "makes it less likely that [petition circulators] will garner the number of signatures necessary to place the matter on the

ballot, thus limiting their ability to make the matter the focus of statewide discussion." *Id.* at 423. Plaintiffs contend that they have been unable to collect any signatures since the Governor's stay-at-home order took effect on March 20, 2020 and therefore that the witness and handwritten signature requirements inhibit their ability to obtain the necessary 363,813 signatures. (Pls.' Mot. for Prelim. Inj. at 5–6.) For reasons described earlier, however, the court is unable to conclude that it is state action that has precluded Plaintiffs' efforts. They have been free to circulate and gather signatures since November 2018, yet of the seven Plaintiffs, just one had even begun the effort prior to the Governor's order, and that single Plaintiff (Morgan) offered no evidence that he had collected any signatures prior to the issuance of that Order. Morgan's own ballot initiative committee was not created until April 1, 2020. (*See* Ex. A to Board Resp. [21-1].)

Plaintiffs have not established that it is state law, rather than their own 16-month delay, that imposes a severe burden on their First Amendment rights, even in the context of the COVID-19 pandemic. *Cf. Stone*, 750 F.3d at 682 ("What is ultimately important is . . . whether a reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot."). Indeed, with respect to the City of Evanston, Plaintiffs have presented no evidence of any severe burden; the deadline for gathering signatures there does not expire until August 3. The court concludes Plaintiffs have not established a likelihood of success on their claims or that the balance of hardships, discussed below, favors this motion.

    **2.**    **Balance of Harm and Public Interest**

Even if putting a constitutional amendment to the voters is not a First Amendment right, *see Jones*, 892 F.3d at 937, the court acknowledges that Plaintiffs have an interest in seeing their referenda on the ballot in November. As previously discussed, however, the harm they have alleged appears speculative in light of the absence of evidence that they have collected any signatures or made even negligible progress toward qualifying for the ballot prior to entry of the Governor's order. That is, it is not apparent that Plaintiffs had any realistic chance of complying

12

with all of the ballot initiative requirements even before the Governor's COVID-19-related orders or that issuing the injunction they request will actually enable them to achieve their goal.

And despite Plaintiffs' contention to the contrary, the relief they request may appears likely to result in concrete harm to Defendants. In a similar case in the Central District of Illinois, the court noted that "[t]he Illinois constitution and state and federal law set out duties that must be performed by the ISBE Defendants and the Secretary of State." *Bambenek v. White*, No. 20 C 3107, 2020 WL 2123951, at *5 (C.D. Ill. May 1, 2020) (citing 42 U.S.C. 1973-ff-1 *et seq.*; ILL. CONST. art. XIV, § 3; 10 ILCS 5/28-5). Plaintiffs' requested extension "would make it extremely difficult, if not impossible, for those defendants to fulfill their constitutionally and statutorily mandated obligations." *Id.* As Defendants have explained, much time is needed to verify signatures and ensure that objections to them can be filed and reviewed. *See* 10 ILCS 5/28-4 (rules regarding objections to proposed constitutional amendments). Additional statutory duties include publishing the proposed amendment in newspapers statewide at least one month before the election and creating a pamphlet, which explains the proposed amendment and includes arguments for and against it, that is mailed to every address in the state at least one month before the election. (Williams Decl. ¶¶ 3–12.) The newspaper publication and pamphlets must be translated into many different languages, the process for which is supposed to begin in mid-May. (*Id.*) Delays may also jeopardize the state's ability to comply with the Uniformed and Overseas Citizens Absentee Voting Act, which requires that military ballots be mailed to troops forty-five days prior to the election. 42 U.S.C. § 1973-ff-1 *et seq.*

Preventing Defendants from being able to fulfill these statutory duties not only imposes harm on them but also appears contrary to the public interest. *See Planned Parenthood of Ind.*, 699 F.3d at 972 (district courts should "also evaluate[ ] the effect of an injunction on the public interest"). Plaintiffs contend that their requested relief is in the public interest because "injunctions protecting First Amendment freedoms are always in the public interest." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker,* 453

F.3d 853, 859 (7th Cir. 2006)). But as discussed above, Plaintiffs have no First Amendment right for their amendment to appear on the ballot. And verifying the integrity of potential constitutional amendments submitted to the voters, sending Illinoisans serving in the military overseas their ballots on time, and ensuring that voters can review the proposed amendment before the election in newspapers and pamphlets—all time-consuming and onerous processes for the state—are also in the public interest. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.").

Plaintiffs are correct that this court and those in other jurisdictions have granted relief, similar in part to what Plaintiffs request here, in other election law challenges generated by state stay-at-home orders. *See, e.g., Libertarian Party of Ill. v. Pritzker*, No. 20 C 2112, 2020 WL 1951687 (N.D. Ill. April 23, 2020) (easing ballot access requirements for new party and independent candidates). Significantly, however, for new party and independent candidates in Illinois, "the 'window' for gathering such signatures opened at nearly the same time that Governor Pritzker first imposed restrictions." *Id.* at *4. In contrast, Plaintiffs here were free to begin collecting signatures for their referenda in November 2018—more than a year before any coronavirus-related disruptions had begun. *See* 10 ILCS 5/28-9 (emphasis added) ("Such petition [for proposed amendments] shall have been signed by the petitioning electors *not more than 24 months preceding the general election* . . . ."). Moreover, constitutional amendments are subject to several requirements—such as the preparation of explanatory pamphlets, translation into several languages, *see* Williams Decl., and publication in newspapers statewide one month before the election, 5 ILCS 20/2—that do not apply to new party or independent candidates.

Plaintiff Morgan here began the referendum process at the eleventh hour, and the other Plaintiffs have not effectively begun it at all. They have not made a compelling showing that the court should require public officials to upend the statutory and constitutional timetable for that process. In sum, neither the balance of harms nor the public interest favors granting Plaintiffs' requested injunction.

## **CONCLUSION**

For the foregoing reasons, the court denies Plaintiffs' Emergency Motion for Reconsideration in Light of New Developments and to Correct the Record [29].

ENTER:

Date: May 18, 2020

_____
REBECCA R. PALLMEYER
United States District Judge